IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 19-283-01 |
| MILTON MATEO GARCIA-VASQUEZ, a/k/a "Milton M. Garcia" | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Milton Mateo Garcia-Vasquez, a/k/a "Milton M. Garcia," is a citizen of Honduras. In early June 2013, the U.S. Border Patrol found him in the Rio Grande Valley, in Texas, having entered this country illegally over the Mexican border. On or about June 18, 2013, Garcia-Vasquez was removed from the United States, back to his native Honduras.

Approximately one year later, on June 23, 2014, the defendant was arrested by the Philadelphia Police Department in connection with a rape in Rittenhouse Square. Garcia-Vasquez was charged with Aggravated Assault, Rape-Forcible Compulsion, Involuntary Deviate Sexual Intercourse ("IDSI")-Forcible Compulsion, two counts of Burglary, Criminal Trespass-Break Into Structure, Theft by Unlawful Taking-Movable Property, Receiving Stolen Property, Indecent Exposure, Unlawful Restraint-Serious Bodily Injury, Indecent Assault-Without Consent of Other, Simple Assault, Recklessly Endangering Another Person, False Imprisonment, Sexual Assault and Kidnap to Facilitate a Felony. On November 5, 2015, the defendant pleaded *nolo contendere* in the Philadelphia Court of Common Pleas to Rape-Forcible Compulsion, in violation of 18 Pa.C.S.A. § 3121(a)(1); IDSI-Forcible Compulsion, in violation of 18 Pa.C.S.A. § 3123(a)(1); Burglary-Overnight Accommodation-Person Present, in violation of 18 Pa.C.S.A. § 3502(a)(1); and Kidnap to Facilitate a Felony, in violation of 18 Pa.C.S.A. § 2901(a)(2). On

March 7, 2016, Garcia-Vasquez was sentenced to 7½-15 years' imprisonment on the Rape conviction, 7½-15 years' imprisonment on the IDSI conviction, 3-6 years' imprisonment on the Burglary conviction, and 4-8 years' imprisonment on the Kidnap to Facilitate a Felony conviction, all to run consecutively, for a total of 22-44 years' imprisonment.

Police reports, turned over in discovery, show that shortly after 1 a.m. on June 21, 2014, the victim was walking to her apartment in the Rittenhouse Square neighborhood of Philadelphia, when the defendant came up behind her, grabbed her arm and waist, and directed her to walk to her apartment, which she did. As she reached the exterior stairs to her apartment, she attempted to break away from the defendant's grasp, but he grabbed her by the back of her neck and told her to go inside. Once she had unlocked the outside door, the defendant forced her up the interior stairway. As she reached the door to her apartment, the victim again struggled with the defendant, trying to escape, but he pushed and dragged her inside her apartment. Once inside, the defendant raped the victim and put his penis in her mouth. After the rape, he left her apartment, only to return a few minutes later and rape her again. The victim suffered severe bruising to her arms and back, as well as lumps on her head, from the defendant's dragging and pulling her before and during the sexual assault.

Video surveillance footage showed the defendant approaching and grabbing the victim. He also stole the victim's iPhone and her keys, which were found inside the rooming house where the defendant was arrested.

As described above, despite having been removed from this country in 2013, the defendant was found in Pennsylvania on June 23, 2014. He had not sought permission to re-enter the United States. On August 7, 2019, the defendant pleaded guilty before this Court to one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a). Based on all of the

facts of this case, the government recommends a sentence of incarceration of 24 months, a variance above the high end of the advisory Sentencing Guideline range of one to seven months in prison.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence above the guideline range in this case.

## I. BACKGROUND

On August 7, 2019, the defendant pleaded guilty to re-entry after deportation, in violation of 8 U.S.C. § 1326(a), arising from his knowing and unlawful re-entry into the United States after removal. There is no plea agreement between the parties. During his plea colloquy, the defendant admitted that on or about June 23, 2014, he was arrested by City of Philadelphia Police, and charged with the above offenses, violations of Pennsylvania law. Defendant Garcia-Vasquez admitted further that on or about March 7, 2016, he was convicted of the offenses by nolo plea, in the Philadelphia County Court of Common Pleas, case no. CP-51-CR-0010316-2014. He admitted further that prior to being convicted, he had been removed from the United States. Finally, defendant Garcia-Vasquez admitted that after removal, he re-entered the country illegally.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant for re-entry after deportation, in violation of 8 U.S.C. § 1326(a), is two years in prison, a three-year period of supervised release, a $250,000 fine and a $100 special assessment.

### B. Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows: the base offense level is 8 per USSG § 2L1.2(a). PSR p. 5, ¶ 17. No offense levels are

added for specific offense characteristics.[1] Two levels are subtracted for acceptance of responsibility, PSR p. 5, ¶ 23, for a total offense level of 6. PSR ¶ 24. As of the time that this memorandum was filed, the government was not aware of any conduct inconsistent with acceptance of responsibility.

His convictions and sentences for Rape-Forcible Compulsion; IDSI-Forcible Compulsion; Burglary-Overnight Accommodation-Person Present; and Kidnap to Facilitate a Felony place the defendant in Criminal History Category (CHC) II. PSR pp. 5-6, ¶ 26. A person in CHC II at offense level 6 faces a sentencing guidelines range of one to seven months in prison. PSR p. 10, ¶ 58.

### III.  ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one above the advisory sentencing guideline range. In particular, on this record, an above-guidelines consecutive sentence is necessary to protect the community, promote respect for the law, provide a just punishment, take into account the defendant's history, and deter the defendant and others who might engage in similar crimes. The government recommends that the Court impose a sentence of 24 months in custody, above the

---

[1]  Under the current, 2018 Guidelines, the base level would remain 8. Under USSG § 2L1.2(b)(3)(A), the defendant's offense level would be raised by 10 levels, for a total offense level of 18, because he committed the rape crimes after being ordered removed, and received a sentence of five or more years. With a CHC of II, the applicable range after acceptance would be 21 to 24 months, based on a final offense level of 15.

However, current guideline § 2L1.2(b)(3)(A) became effective November 1, 2016 via Amendment 802, which is after June 23, 2014, the date when the defendant was found in the United States. Because the current guidelines are more severe than the guidelines in effect when the defendant was found in the United States, use of the current guidelines would create an *ex post facto* issue. Consequently, the PSR correctly uses the previous, 2013, guidelines instead.

advisory guideline range of one to seven months in prison, to run consecutive to the state sentence that the defendant is currently serving.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[2]

**Consideration of the 3553(a) Factors.**

The defendant committed a serious offense. Having been removed from the United States, the defendant was prohibited from re-entering the country, and he knew it. His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a guideline sentence at the least.

However, while the guidelines are "the starting point and the initial benchmark" for the sentence, they "are not the only consideration": sentencing courts must make an individualized assessment to determine the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). In this case, the defendant's history strongly supports the need for more significant incarceration. The violent felonies that he committed after re-entering our country illegally were horrific. Late at night, the defendant followed a young woman home, manhandling her to force her to let him into her apartment. PSR ¶ 26. Once inside, he raped and otherwise violated her. PSR ¶ 26. Shockingly, he left her apartment, only to return a few minutes later to rape her again and steal her keys and phone. He robbed the victim of her bodily integrity and injured her

---

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

physically as well. His crimes terrorized the city. In these circumstances, it is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit similar violent offenses, and protects the public from further crimes of this defendant, for at least as long as he remains incarcerated. *Id.* A sentence above the guidelines will send an important message that the punishment will be so severe that it is not worth committing the crime.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7).

At the same time, the defendant has not set forth any persuasive argument for leniency. He admits that growing up in Honduras, his stepfather and his mother not only met his material needs, PSR ¶ 34, but provided him and his siblings with a nurturing family environment, devoid of any abuse. *Id.* Reportedly, the defendant has a wife and two children in Honduras. PSR ¶¶ 37-38. Neither his upbringing nor his marriage in his home country sheds any light on why, after illegal re-entry, he committed these violent, horrific felonies in the first place. He argues further that he illegally re-entered the United States to find employment and live a better life, but once he had returned illegally, he committed crimes.

The defendant says that he is sorry for returning to the United States and seeks a sentence within the guidelines. Contrary to his claim of contrition, if his past actions are any guide, no

physically as well. His crimes terrorized the city. In these circumstances, it is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit similar violent offenses, and protects the public from further crimes of this defendant, for at least as long as he remains incarcerated. *Id.* A sentence above the guidelines will send an important message that the punishment will be so severe that it is not worth committing the crime.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7).

At the same time, the defendant has not set forth any persuasive argument for leniency. He admits that growing up in Honduras, his stepfather and his mother not only met his material needs, PSR ¶ 34, but provided him and his siblings with a nurturing family environment, devoid of any abuse. *Id.* Reportedly, the defendant has a wife and two children in Honduras. PSR ¶¶ 37-38. Neither his upbringing nor his marriage in his home country sheds any light on why, after illegal re-entry, he committed these violent, horrific felonies in the first place. He argues further that he illegally re-entered the United States to find employment and live a better life, but once he had returned illegally, he committed crimes.

The defendant says that he is sorry for returning to the United States and seeks a sentence within the guidelines. Contrary to his claim of contrition, if his past actions are any guide, no

sentence except the statutory maximum will deter him, deter others, protect the community and promote respect for the law.

In sum, in this case the guideline range does not adequately take into account the defendant's history and characteristics; the need to protect the community; the need to promote respect for the law; or the need to deter the defendant and others from committing future violent crimes. Thus all of the appropriate considerations of sentencing favor the imposition in this case of a variance sentence of 24 months in prison, consecutive to the sentence Garcia-Vasquez is serving.

## IV. CONCLUSION

For these reasons, the government recommends that the Court impose a variance sentence of 24 months in prison, consecutive to the sentence that the defendant is currently serving.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

MARY E. CRAWLEY
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Nancy Maceoin, Esquire
Defender Association of Philadelphia
Federal Court Division
The Curtis Center Building
601 Walnut Street, Suite 540 West
Independence Square West
Philadelphia, PA 19106

MARY E. CRAWLEY
Assistant United States Attorney

DATED: January 3, 2020